IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-673-RJC-DCK

| | |
|---|---|
| HYDE PARK STORAGE SUITES, INC.; HPSSMC, LLC; HYDE PARK III; HYDE PARK STORAGE SUITES DAYTONA, LLC; THE KEVIN P. MAHL REVOCABLE TRUST; THE KEVIN AND MICHELLE MAHL REVOCABLE TRUST; KEVIN MAHL; and MICHELLE MAHL; <br><br> Plaintiffs, <br><br> v. <br><br> CROWN PARK STORAGE SUITES, LLC; RICHARD A. LOMAN; and JOHN DOES 1-100, <br><br> Defendants. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Or In The Alternative To Transfer Venue To District Of Florida" (Document No. 5). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u>.

### I. BACKGROUND

Plaintiffs Hyde Park Storage Suites, Inc., HPSSMC, LLC, Hyde Park III, Hyde Park Storage Suites Daytona, LLC ( together "Hyde Park"), and the Kevin P. Mahl Revocable Trust, the Kevin and Michelle Mahl Revocable Trust, Kevin Mahl, and Michelle Mahl (the "Mahls") (all together "Plaintiffs") initiated this action with the filing of a "Complaint" (Document No. 1) on December 21, 2018.

The Complaint asserts claims against Crown Park Storage Suites, LLC ("Crown Park") and Richard Loman ("Loman") (together "Defendants") for: (1) Lanham Act - Trade Dress Infringement Unfair Competition/False Designation; (2) Trade Dress Dilution under the Lanham Act; (3) State Unfair Trade Practices; (4) Breach of Contract; (5) Conversion; and (6) Tortious Interference with Business Relations.[1] (Document No. 1, pp. 24-30). Notably, Plaintiffs assert that "Defendants' wrongful acts constitute unfair or deceptive trade practices under Florida law." (Document No. 1, pp. 27-28). Moreover, Plaintiffs allege that Defendant Loman is liable for breach of contract because he breached a Lease Agreement with Hyde Park Storage Suites Daytona, LLC, entered into in Daytona Beach, Florida and regarding lease of a storage unit in Daytona Beach, Florida. (Document No. 1, pp. 28-29).

The Complaint generally avers that Plaintiffs have designed and developed a business which sells and leases "highly distinctive luxury over-sized 'man-caves' with a common consistent and distinctive trade dress." (Document No. 1, p. 1). Plaintiffs allege that Defendants "have devised a scheme to knock off and trade off of Mahls' Hyde Park Trade Dress." (Document No. 1, p. 3). Plaintiffs complain that Defendants *intend* to build a structure within a mile of their facility in Daytona Beach, Florida. (Document No. 1, pp. 3-4).

"Plaintiff Hyde Park Storage Suites Daytona, LLC is a corporation organized and existing under the laws of the State of Florida, with a principal place of business at Cornelius, North Carolina." (Document No. 1, p. 6).[2] Apparently, Hyde Park Storage Suites Daytona, LLC owns and/or operates Hyde Park Storage Suites located at 3088 W. International Speedway Blvd.,

---

[2] Defendants contend that according to the Florida Secretary of State, Hyde Park Storage Suites Daytona, LLC's principal place of business is 3042 W. International Speedway Blvd., Daytona Beach, Florida. (Document No. 5-1, p. 3).

Daytona Beach, Florida. (Document No. 1, pp. 8-9). Defendant Crown Park is "organized and existing pursuant to the laws of the State of Florida," with a principal address in South Daytona, Florida, and Defendant Richard Loman is "an individual residing in South Daytona, Florida." (Document No. 1, p. 6); see also (Document No. 5-1, p. 3).

On February 11, 2019, "Defendants' Motion to Dismiss Or In The Alternative To Transfer Venue To District of Florida" (Document No. 5) was filed. Defendants argue that the claims should be dismissed for lack of personal jurisdiction and/or improper venue, or in the alternative, that this case should be transferred to the United States District Court for the Middle District of Florida. (Document No. 5, p. 1; Document No. 5-1, p. 1).

Plaintiffs' "Memorandum In Opposition To Motion To Dismiss Or Transfer Venue" (Document No. 8) was filed on February 25, 2019. "Defendants' Reply In Support Of Motion To Dismiss…" (Document No. 9) was filed on March 3, 2019. "Plaintiffs' Surreply Re: Defendants' Motion to Dismiss or Transfer Venue" (Document No. 12) was filed on March 12, 2019.

The pending motion is now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(2)

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and

3

Case 3:18-cv-00673-RJC-DCK    Document 13    Filed 07/11/19    Page 3 of 16

> the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. December 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

4

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

**B. Federal Rule of Civil Procedure 12(b)(3)**

When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action. Static Control Components, Inc. v. Intersolution Ventures, Ltd., 2006 WL 2042900 at *10 (M.D.N.C. July 17, 2006) (citing Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C. 1996)). Where jurisdiction is founded on diversity of citizenship, venue is proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision to transfer is left to the sound discretion of the trial court." Uniprop Mfd. Housing Commun. Income Fund v. Home Owners Funding Corp. Of Am., 753

5

Case 3:18-cv-00673-RJC-DCK   Document 13   Filed 07/11/19   Page 5 of 16

F.Supp. 1315, 1322 (W.D.N.C. 1990). In determining whether to transfer a case, the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice. Id.

> In considering a motion to transfer, a court should consider, among other things, the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home; the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and the avoidance of unnecessary problems with conflict of laws.

Commercial Equipment Co., Inc. v. Barclay Furniture Co., 738 F.Supp.974, 976 (W.D.N.C. 1990.)

## III. DISCUSSION

### A. Personal Jurisdiction

#### 1. Long-Arm Statute

The North Carolina long-arm statute authorizes the exercise of jurisdiction over a defendant in twelve circumstances. N.C.Gen.Stat. § 1-75.4(1)-(12). Here, Plaintiff contends Defendants are subject to personal jurisdiction pursuant to N.C. Gen. Stat. § 1-75.4(4)(a):

> Defendants are subject to personal jurisdiction in this Court by virtue of the North Carolina Long-Arm Statue and such jurisdiction may be exercised consistent with the Due Process Clause of the United States Constitution. First, this action involves a claim of injury to a North Carolina person or property, from activities the Defendants engaged in inside and outside of the State of North Carolina, and the Defendants have been engaged in solicitation or services in this State around the time of the injury. Second, Defendants have entered the state of North Carolina to conduct business related to leasing or selling storage units for Crown Park Storage Suites, LLC.

(Document No. 1, p. 7).

**2. Due Process**

If personal jurisdiction is authorized under the long-arm statute, a court must next consider whether there are sufficient contacts with the forum state to meet the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

a. General Jurisdiction

"The Fourth Circuit has described the threshold level of minimum contacts required for general jurisdiction as 'significantly higher than for specific jurisdiction' and as 'very substantial, indeed.'" Sweezy, 2009 WL 382719 at *2 quoting EASB Group, 126 F.3d at 623-24. In the instant case, Plaintiff does not argue that there is general jurisdiction over the Defendant, focusing instead on specific personal jurisdiction. Moreover, the facts as alleged do not support a finding that Defendants' contacts with this forum were either substantial, or sufficiently continuous and systematic to meet the requirements for general jurisdiction.

b. Specific Jurisdiction

Specific jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. International Shoe v. Washington, 326 U.S. 310, 319 (1945). However, "to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" Consulting Engineers, 561 F.3d at 277-78 (quoting ESAB Group, 126 F.3d at 623). It is essential that a plaintiff show that a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." Burger King Corp. v. Rudzewicz, 471 U.S. 462,

475 (1985). Each defendant's contacts with a forum state must be assessed individually. Calder v. Jones, 465 U.S. 783, 790 (1984). As noted above, the Fourth Circuit has "synthesized the due process requirement for asserting specific jurisdiction in a three-part test… '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Consulting Engineers, 561 F. 3d at 278 (quoting ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d at 712).

Pursuant to the foregoing, the resolution of the pending motion hinges on the significance of Defendants' contacts with North Carolina and whether Plaintiffs' claims arise out of activities directed at North Carolina. In the "Affidavit of Richard A. Loman" (Document No. 5-2) and "Defendants' Motion To Dismiss Or In The Alternative To Transfer Venue To District Of Florida" (Document No. 5), Defendants describe their contacts, or lack thereof, with North Carolina.

First, Defendants argue that Mr. Loman is a resident and citizen of Daytona Beach, Florida and is not subject to personal jurisdiction in North Carolina. (Document No. 5, p. 8). In further support of this contention, Defendants assert the following about Mr. Loman: (1) he works and conducts all business matters in the State of Florida; (2) he has never lived in the State of North Carolina; (3) he has never conducted business in the State of North Carolina; (4) he has never otherwise availed himself to the privileges of conducting activities in the State of North Carolina; and (5) all business of Crown Park Storage Suites, LLC is conducted in the State of Florida. (Document No. 5-2). In addition, Defendants note that Crown Park is a limited liability company created and existing under the laws of the State of Florida. (Document No. 5, p. 8) (Document No. 5-3). Defendants contend that at no time since Crown Park's creation has it conducted business or had any contact with the forum state of North Carolina. (Document No. 5, p. 8).

8

Perhaps even more compelling than the limited contacts with North Carolina is Defendants' argument that specific jurisdiction fails under the second element of the test because the Complaint does not show that the claims against Defendants arose out of activities directed at North Carolina. (Document No. 5, p. 8). Plaintiffs' alleged trade dress infringement arises out of Defendant Loman's alleged plan to build a luxury storage facility in Daytona Beach, Florida. (Document No. 5, p. 8). Defendants point out there are no allegations that they also plan to build a luxury storage facility in North Carolina, and no allegations that Defendants have taken any other action in North Carolina. (Document No. 5, p. 8).

In their response, Plaintiffs acknowledge hiring a private investigator, Matthew Hewlett ("Hewlett"), to "obtain details pertaining to Crown Park's building layout, storage unit pricing, purchase, lease and financing options, and any literature or other promotional material available to prospective customers." (Document No. 8, p. 6); see also (Document No. 8-2). Mr. Hewlett engaged in several communications with Defendant Loman between November 13 and December 7, 2018, just weeks before Plaintiffs filed this action on December 21, 2018. (Document No. 8, pp. 6-7; Document No. 8-2). Mr. Hewlett initiated the contact with Mr. Loman and "explained to Mr. Loman that I was looking for storage units for my Father's 40 foot RV . . . in the Daytona Beach, Florida area." (Document No. 8-2, p. 1).

Plaintiffs contend that Defendants purposefully availed themselves of the benefits and protections of North Carolina law by: conducting telephone calls with, and sending text messages to Mr. Hewlett who is located in North Carolina and using a North Carolina-based phone number; sending flyers, promotional materials, and agreements via email and regular mail to Mr. Hewlett's North Carolina address; and sending personalized contracts to Mr. Hewlett in North Carolina. (Document No. 8, pp. 6-8); (Document No. 8-2).

9

Plaintiffs argue that this activity "readily indicates that Defendants purposefully and knowingly directed their business activities at the State of North Carolina" and Defendant Loman's "actions simply cannot be said to have resulted from random, fortuitous, or otherwise attenuated activity." (Document No. 8, p. 8). Relying on Christian Sci. Bd. Of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209 (4th Cir. 2001), Plaintiffs contend that the "fact that Defendant Loman himself did not initiate the contacts is of no consequence." (Document No. 8, p. 8). In Nolan, the Fourth Circuit expressly stated that "[a] prospective defendant need not initiate the relevant 'minimum contact' to be regarded as purposefully availing himself of the privileges of conducting activity in the forum state." (Document No. 8, p. 9) (citing Nolan, 259 F.3d at 216).

Second, Plaintiffs argue the alleged trade dress infringement arises out of activities directed in the forum state of North Carolina. (Document No. 8, p. 9). Plaintiffs claim "the materials that Defendant Loman sent into [North Carolina] without being asked to do so included flyers and promotional items showing the infringing facility bearing the very trade dress at issue and did so for the purpose of enticing Mr. Hewlett to purchase or lease a portion of the infringing facility." (Document No. 8, p. 9). Again, Plaintiffs rely on Nolan, where a defendant sent materials into the forum state and "the Fourth Circuit disposed of the second prong of the inquiry in a single sentence: '[a]s to the second requirement, there is no dispute that the material drafted and transmitted by Nolan formed the basis for the alleged infringement.'" (Document No. 8, p. 10). Plaintiffs argue that by knowingly and intentionally sending the artist's rendering of the infringing facility into the State of North Carolina, Defendant Loman's forum-related actions directly establish a basis for Plaintiffs' claims. (Document No. 8, p. 10).

"Defendants' Reply" argues:

> In order to show that a "defendant purposefully availed itself of the privilege of conducting activities in the forum state," Plaintiff must

10

> show activities initiated by Defendant. *Id*. "The connection to the forum 'must arise out of contacts that the defendant *himself* created with the forum State.'" *Walden v. Fiore*, 571 U.S. 277, 285-86, 134 S. Ct. 1115, 1122-23, 188 L. Ed. 2d 12 (2014)(emphasis in original) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, (1985)(internal quotation marks omitted)). Thus, the connection required to establish specific jurisdiction must be based on contact Defendants made with North Carolina and cannot be based on contacts created by Plaintiff's agent. "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden* at 285-86. In the instant case, Plaintiff's agent's contacts with Defendant are the sole basis upon which Plaintiffs argue the Defendant have sufficient contacts with the forum. Supreme Court precedent shows that this is not sufficient: "If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King* at 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985).

(Document No. 9, pp. 2-3).

Defendants explain there are no other contacts between Defendants and North Carolina and go on to analyze the factors determinative of whether a defendant purposefully availed itself of the privilege of conducting activities in the forum state, concluding Defendant's conduct does not meet any of the necessary factors. (Document No. 9, pp. 3-4).

Last, Defendants argue that Plaintiffs' reliance on the Nolan case is misplaced. (Document No. 9, p. 4). In Nolan, the defendant sent content to a North Carolina web developer to post on its website hosted, maintained, modified and run in North Carolina. (Document No. 9, p. 4). The Court held that Nolan "deliberately entered a collaborative enterprise with [the web developer], well aware that any potentially tortious content he created would be physically uploaded by a North Carolina resident working on a computer in North Carolina." (Document No. 9, p. 5) (citing Nolan, 259 F.3d at 216-17). Defendant argues that, unlike the Nolan case where the defendant

11

sent materials into North Carolina on his own accord, Mr. Loman only sent materials to Plaintiffs' agent after Plaintiffs' agent specifically targeted Mr. Loman.  (Document No. 9, p. 5).  Defendants claim this is insufficient to create "substantial contacts" between North Carolina and Defendants, and therefore, there is no personal jurisdiction.  (Document No. 9, p. 5).

"Plaintiffs' Surreply…" was filed to address the argument that Defendants "were somehow 'entrapped' into making minimum contacts with the forum State."  (Document No. 12, p. 1).  Plaintiffs do not seem to disagree that their private investigator, Mr. Hewlett, initiated the contact with Mr. Loman in Florida, nor do they deny that Mr. Hewlett pretended to be a customer interested in a Florida storage facility and that Plaintiffs thus "engaged in a directed effort to create contacts between Defendants and North Carolina."  (Document No. 9, p. 2);  see also (Document No. 12).  Instead, Plaintiffs re-assert that Mr. Loman knowingly and intentionally sent emails, regular mail, and/or made phone calls to Mr. Hewlett in North Carolina, thereby satisfying the minimum contacts for personal jurisdiction.  (Document No. 12).

Based on the parties' arguments, applicable legal authority, and a careful review of the record, the undersigned is not persuaded that this Court has personal jurisdiction over Defendants.  As noted above, due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state.  The Fourth Circuit has opined that "[t]he jurisdictional inquiry remains centered on the extent, nature, and quality of [Defendant's] contacts with [North Carolina]."  Consulting Engineers, 561 F.3d at 281.  Furthermore, "the Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there."  Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., et al., 982 F.Supp. 350, 353 (D.Md. 1997).  Here, the

undersigned cannot find that Defendants' contacts with Plaintiffs' agent are tantamount to a physical presence in North Carolina.

Additionally, the crux of Plaintiffs' argument relies on Defendant Loman's contacts with Plaintiffs' paid investigator who initiated the contact. Plaintiffs' conduct in this regard is at best questionable. It appears that Mr. Hewlett may have contacted Defendant Loman for the sole purpose of creating a purported jurisdictional contact. The undersigned does not condone such practice and cannot find that the resulting communications support that Defendants purposefully availed themselves of the privilege of conducting activities in North Carolina.

Construing all relevant pleadings in the light most favorable to Plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the undersigned does not find that application of the Fourth Circuit's three-part test for specific jurisdiction supports Plaintiffs' position. See Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, 293 F.3d at 712). Plaintiff has not met its burden of showing by a preponderance of the evidence that Defendants purposefully availed themselves of the privilege of conducting activities in this State, that Plaintiffs' claims arise out of activities directed at North Carolina, or that the exercise of personal jurisdiction would be constitutionally reasonable. As noted by Defendants, "*all of the events giving rise to this claim occurred or will occur in the Middle District of Florida*." (Document No. 5-1, p. 10). The alleged contacts, as well as the alleged wrongdoing, simply appear to be too attenuated. Based on the foregoing, the undersigned will respectfully recommend Defendants' motion to dismiss be granted.

**B. Venue**

In the alternative, Defendants contend that this case should be dismissed for improper venue and/or transferred to Florida pursuant to 28 U.S.C. § 1404(a), because this action should

13

have been and can only be properly brought in that district. (Document No. 5, p. 11). Although the undersigned is persuaded that this Court lacks personal jurisdiction over this matter, if the Court determines that dismissal is inappropriate at this stage, then the undersigned recommends that this matter should be transferred to the United States District Court for the Middle District of Florida. Questions regarding transfer under § 1404(a) are within the district court's discretion and "a court need not have personal jurisdiction over a defendant to transfer a case pursuant to § 1404(a)." Boyd v. Koch Foods, 2011 2413844 at *2 (E.D.N.C. June 10, 2011).

> Courts consider numerous factors in determining whether transfer is appropriate. These factors include the convenience of the witnesses, where the events occurred that gave rise to the action, the residences of the parties, plaintiff's initial choice of forum, the availability of compulsory process, and the law which will govern the dispute… Plaintiff's choice of forum is ordinarily accorded considerable weight, but that weight is lessened when the conduct giving rise to the complaint did not occur in the forum.

Id. (internal citations omitted). See also US Airways, Inc. v. US Airline Pilots Ass'n, 3:11-CV-371-RJC-DCK, 2011 WL 3627698, at *3 (W.D.N.C. Aug. 17, 2011).

Here, as in Boyd, the undersigned finds that the alleged actions giving rise to Plaintiffs' claims occurred in another state. While Plaintiffs argue that part of the infringing conduct was targeted toward this State, the undersigned is persuaded that the substantial part of the events giving rise to Plaintiffs' alleged claims, that is, Defendants' plan to build a facility in Daytona Beach, occurred in Florida.

Importantly, Defendants concede that they are subject to personal jurisdiction in the Middle District of Florida. (Document No. 5, p. 10). As noted above, Defendant Loman is a resident of Florida and Defendant Crown Park Storage Suites, LLC is a corporation, created under the laws of Florida, with its principal place of business in Florida. (Document No. 5, p. 10). Moreover, Plaintiff Hyde Park Storage Suites Daytona, LLC is a corporation organized and existing under

14

the laws of the State of Florida. (Document No. 5, p. 3). In addition, some of Plaintiffs' claims specifically allege violations of the laws of the State of Florida. (Document No. 1).

Although Plaintiff chose this forum, the undersigned finds that the totality of circumstances, including the applicable factors set forth above, favor transfer to Florida if the Court declines to dismiss Plaintiffs' lawsuit for lack of jurisdiction.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss Or In The Alternative To Transfer Venue To District Of Florida" (Document No. 5) be **GRANTED** to the extent that this matter be dismissed for lack of personal jurisdiction. In the alternative, this matter should be **TRANSFERRED** to the United States District Court for the Middle District of Florida.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 11, 2019

David C. Keesler
United States Magistrate Judge

16