UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00673-RJC-DCK

| HYDE PARK STORAGE SUITES, INC., | ) | |
|---|---|---|
| HPSSMC, LLC, HYDE PARK III, HYDE | ) | |
| PARK STORAGE SUITES DAYTONA, | ) | |
| LLC, THE KEVIN P. MAHL REVOCABLE | ) | |
| TRUST, THE KEVIN AND MICHELLE | ) | |
| MAHL REVOCABLE TRUST, KEVIN | ) | |
| MAHL, and MICHELLE MAHL, | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| CROWN PARK STORAGE SUITES, LLC, | ) | |
| RICHARD A. LOMAN, and JOHN DOES | ) | |
| 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss or in the Alternative Transfer Venue, (Doc. No. 5); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 13); Plaintiffs' Objections to the M&R, (Doc. No. 14); and Defendants' Reply to Plaintiffs' Objections, (Doc. No. 15).

I. BACKGROUND

Plaintiffs Hyde Park Storage Suites, Inc., HPSSMC, LLC, Hyde Park III, Hyde Park Storage Suites Daytona, LLC (collectively, "Hyde Park companies"), the Kevin P. Mahl Revocable Trust, the Kevin and Michelle Mahl Revocable Trust, Kevin Mahl, and Michelle Mahl (collectively with Hyde Park, "Plaintiffs") initiated this action with the filing of a Complaint on December 21, 2018. (Doc. No. 1.)

Kevin and Michelle Mahl, residents of North Carolina, control the Hyde Park

companies. (Doc. No. 1, ¶ 10.) The Complaint alleges that the Hyde Park companies offer and lease highly distinctive luxury condominiums with a common and distinctive trade dress. (Doc. No. 1, ¶ 1.) The distinctive features constituting the Hyde Park companies' trade dress include the packaging of condominium units as a wall surrounding a common community area, the inward-facing doors of the units that can only be accessed after passing through a gated facility entrance, and fortress-like towers on each side of the entrance. (Doc. No. 1, ¶ 3.) The Hyde Park companies have locations in Cornelius, North Carolina and Daytona Beach, Florida. (Doc. No. 1, ¶ 9.)

Defendant Crown Park Storage Suites, LLC ("Crown Park") is a Florida limited liability company. (Doc. No. 1, ¶ 15.) Defendant Richard A. Loman ("Loman") is a resident of Florida, (Doc. No. 5-2, ¶ 3), and is the owner of Crown Park, (Doc. No. 1, ¶ 16).

Plaintiffs allege that Loman, a former tenant of the Hyde Park facility in Daytona Beach, Florida, has devised a scheme to "knock off and trade off of" Plaintiffs' trade dress and reputation. (Doc. No. 1, ¶¶ 6, 44.) Specifically, Plaintiffs allege that Defendants are planning to build or otherwise develop a facility of luxury custom garage condominiums that infringes on Plaintiffs' trade dress and other intellectual property rights. (Doc. No. 1, ¶ 17.) The planned Crown Park facility will be located less than one mile from the Hyde Park facility in Daytona Beach, Florida. (Doc. No. 1, ¶ 7.) Plaintiffs allege that Loman has been handing out business cards inside the Hyde Park Daytona Beach facility to other Hyde Park tenants, bringing prospective

2

Crown Park customers onto the Hyde Park Daytona Beach premises to use the inside of the facility to show prospective customers what Crown Park will offer, and approaching existing tenants at the Hyde Park Daytona Beach facility and soliciting them to move to Crown Park upon expiration of their lease. (Doc. No. 1, ¶ 47.) In addition, Plaintiffs allege that Loman, in breach of his Lease Agreement for a unit at the Hyde Park Daytona Beach facility, put Crown Park signage on his vehicle and then took pictures of the vehicle on the Hyde Park Daytona Beach premises to use as part of his promotional campaign for Crown Park. (Doc. No. 1, ¶¶ 48, 81.) Plaintiffs contend that the Crown Park facility will dilute Plaintiffs' trade dress and cause a likelihood of confusion. (Doc. No. 1, ¶¶ 51–52.)

Based on the foregoing allegations, Plaintiffs assert claims for (1) trade dress infringement, unfair competition, and false designation of origin under the Lanham Act, (Doc. No. 1, at 24); (2) trade dress dilution under the Lanham Act, (Doc. No. 1, at 26); (3) unfair or deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act, (Doc. No. 1, at 27); (4) breach of the Lease Agreement, (Doc. No. 1, at 28); (5) conversion, (Doc. No. 1, at 29); and (6) tortious interference with business relations, (Doc. No. 1, at 29).

Defendants filed the Motion to Dismiss or in the Alternative Transfer Venue on February 11, 2019, contending that the Court lacks personal jurisdiction over Defendants. (Doc. No. 5.) In support thereof, Defendants filed an affidavit of Loman in which Loman avers that he is a Florida resident, he works and conducts all of his business matters in Florida, he has never lived in North Carolina, he has never

conducted any business in North Carolina, he has never otherwise availed himself of the privilege of conducting activities in North Carolina, and all business of Crown Park is conducted in Florida. (Doc. No. 5-2.) In the alternative, Defendants request that the Court transfer this case to the Middle District of Florida.

In opposition to Defendants' motion, Plaintiffs filed affidavits of Kevin Mahl and Matthew Hewlett ("Hewlett"). Kevin Mahl avers that Plaintiffs transact all of their business from Cornelius, North Carolina, the luxury condominium unit concept Plaintiffs developed targets and has had vast appeal to the NASCAR community and NASCAR and the teams that compete in the series are almost entirely based in North Carolina, and the Hyde Park Daytona Beach facility has owners and lessors from Florida, North Carolina, Massachusetts, Texas, Iowa, Minnesota, North Dakota, Virginia, Missouri, and Ontario, Canada. (Doc. No. 8-17.)

According to Hewlett's affidavit, Plaintiffs hired Hewlett, a private investigator, and his company to investigate Crown Park and Loman to obtain details pertaining to Crown Park's building layout, storage unit pricing, financing options, and any literature or other promotional material available to prospective customers. (Doc. No. 8-2, ¶ 7.) The investigation occurred from November 8, 2018 through December 7, 2018. (Doc. No. 8-2, ¶ 8.) Hewlett's affidavit sets forth the following communications between Loman and Hewlett:

- On November 13, 2018, Hewlett called Crown Park from his North Carolina phone number. (Doc. No. 8-2, ¶ 10.) Loman answered Hewlett's call, and Hewlett explained to Loman that he was looking for storage units for his father's forty-foot RV and they would like to store it in the Daytona Beach, Florida area. (Doc. No. 8-2, ¶ 10.) Loman advised Hewlett that he could purchase or lease a unit in Crown Park's

4

- facility. (Doc. No. 8-2, ¶ 11.) Loman offered to mail Hewlett a Crown Park information packet, and Hewlett gave Loman a North Carolina mailing address. (Doc. No. 8-2, ¶ 12.) Later that day, Loman called Hewlett to make sure that Hewlett was seriously considering a unit because his assistant discovered that the address Hewlett provided was for a storage facility. (Doc. No. 8-2, ¶ 13.)

- On November 20, 2018, Hewlett called Loman because he had not received the information packet. (Doc. No. 8-2, ¶ 14.) Loman advised Hewlett that it was mailed, and Hewlett received the information packet later that day. (Doc. No. 8-2, ¶¶ 14–15.) Hewlett then called Loman and requested that Loman email him the information packet, which Loman did that same day. (Doc. No. 8-2, ¶¶ 16–17.)

- On December 4, 2018, Hewlett called Loman and informed Loman that he was considering leasing or purchasing a Crown Park unit and wanted additional details. (Doc. No. 8-2, ¶ 19.) Loman provided Hewlett with detailed information regarding broker, escrow, and financing options. (Doc. No. 8-2, ¶ 19.) Also, Loman went into detail about how the Crown Park idea developed and his experiences with Hyde Park, indicating that he got the idea from two gentlemen in Charlotte, North Carolina who had opened Hyde Park. (Doc. No. 8-2, ¶ 19.) After the phone call, Loman texted Hewlett asking him to provide legal names and an email address so that Loman could send draft agreements to him. (Doc. No. 8-2, ¶ 21.)

- On December 5, 2018, Loman texted and called Hewlett requesting his address for the Crown Park unit deed. (Doc. No. 8-2, ¶ 23.) Loman then emailed a reservation agreement and an escrow agreement to Hewlett that contained Hewlett's North Carolina address. (Doc. No. 8-2, ¶ 26.) The email requested that Hewlett review, sign, and send the agreements back to Loman. (Doc. No. 8-2, ¶ 26.) That same day, Loman emailed a second reservation agreement to Hewlett that contained Hewlett's North Carolina address. (Doc. No. 8-2, ¶ 27.)

- On December 6, 2018, Hewlett emailed Loman requesting that Loman send him a lease reservation document for a Crown Park unit. (Doc. No. 8-2, ¶ 28.) In response, Loman sent Hewlett the lease reservation document on December 7, 2018, which contained Hewlett's North Carolina address. (Doc. No. 8-2, ¶ 29.)

In the M&R, the Magistrate Judge concluded that Plaintiffs failed to show that the Court had personal jurisdiction over Defendants and recommended that the

Court grant Defendants' motion to dismiss. (Doc. No. 13, at 12–13.) The Magistrate Judge alternatively recommended that the Court transfer this case to the Middle District of Florida. (Doc. No. 13, at 15.)

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1); Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). However, when "the district court decides jurisdiction on the motion papers alone, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis to prevail." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016) (quotation marks omitted). "When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016).

## III. DISCUSSION

Plaintiffs object to the M&R on two primary grounds: (1) the M&R improperly disregards Plaintiffs' evidence of Defendants' contacts with Plaintiffs' private investigator, and (2) the M&R improperly holds Plaintiffs to a preponderance of the evidence standard and makes several analytical errors thereunder.[1] (Doc. No. 14, at 3–4.) The Court agrees that the M&R improperly holds Plaintiffs to a preponderance of the evidence standard; however, viewing all the evidence in the light most favorable to Plaintiffs—including evidence of Defendants' contacts with Plaintiffs' private investigator—the Court concludes that Plaintiffs have failed to make the necessary prima facie showing of personal jurisdiction.

A district court may properly assert personal jurisdiction over a nonresident defendant only if (1) jurisdiction is authorized by the long-arm statute of the state in which the district court sits, and (2) assertion of that jurisdiction is consistent with constitutional due process. Universal Leather, LLC v. Koro Ar, S.A., 773 F.3d 553, 558 (4th Cir. 2014). "North Carolina's longarm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the two-prong test collapses into a single inquiry as to whether the exercise of jurisdiction over a defendant is consistent with due process. Id.

---

[1] As the Court concludes it lacks personal jurisdiction over Defendants, it need not consider Plaintiffs' objection to the M&R's analysis of Defendants' alternative request that the case be transferred to the Middle District of Florida.

7

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Md., Inc., 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. Sneha Media & Entm't, LLC v. Associated Broad. Co. P, 911 F.3d 192, 198 (4th Cir. 2018). Here, only specific jurisdiction is at issue.

Specific jurisdiction exists when "the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts[.]" Id. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (quotation marks omitted). In order to establish specific jurisdiction over a nonresident defendant, a plaintiff must show (1) defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) plaintiff's claims arise out of those activities directed at the forum state; and (3) the exercise of personal jurisdiction would be constitutionally reasonable. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). "The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which itself is based on the premise that a [defendant] that enjoys the privilege of conducting business within a state bears the reciprocal

obligation of answering to legal proceedings there." Universal Leather, LLC, 773 F.3d at 559 (quotation marks omitted). The Fourth Circuit has developed several nonexclusive factors to be considered in determining whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Entm't, LLC, 911 F.3d at 198–99.

Here, Plaintiffs argue that they have established a prima facie case of jurisdiction because the evidence shows that "Defendants reached out beyond Florida and physically entered the State of North Carolina" to "deliberately exploit[] a market in the forum state, i.e., the NASCAR community." (Doc. No. 14, at 11.) In so arguing, Plaintiffs rely on the communications between Loman and Hewlett. These communications, however, are insufficient to establish that Defendants purposefully availed themselves of the privilege of doing business in North Carolina. Loman and Hewlett exchanged approximately six emails, one mailing, three text messages, and six phone calls. Defendants do not maintain offices or agents in North Carolina, Defendants do not maintain property in North Carolina, the record does not reflect that Defendants have any ongoing business activity in North Carolina, and the record does not reflect that Defendants had any in-person contact with Plaintiffs or their

9

agents in North Carolina. See Consulting Eng'rs Corp., 561 F.3d at 279–80 (concluding that four phone conversations and twenty-four emails between plaintiff and defendant were insufficient to support personal jurisdiction where defendant did not have offices or employees in the state, did not own property in the state, had no ongoing business activity in the state, and did not have any in-person contact with plaintiff in the state); see also Perdue, 814 F.3d at 189 (concluding that the Maryland district court did not have personal jurisdiction over defendant in a breach of contract case where defendant maintained no agents in Maryland, owned no property in Maryland, did not initiate the negotiations that led to the agreement, did not travel to Maryland in connection with the agreement, and conducted no business in Maryland, notwithstanding that defendant entered into an agreement with a company headquartered in Maryland, plaintiff sent purchase orders to defendant from Maryland, and defendant sent invoices to plaintiff in Maryland). Simply put, Defendants' contacts do not support the conclusion that Defendants purposefully availed themselves of the privilege of doing business in North Carolina such that they should reasonably anticipate being haled into a North Carolina court. Therefore, the Court concludes that it lacks personal jurisdiction over Defendants.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 13), is **ADOPTED in part**;

2. Defendants' Motion to Dismiss or in the Alternative Transfer Venue, (Doc. No. 5), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: September 27, 2019

Robert J. Conrad, Jr.
United States District Judge